**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ALBERTO MARTINEZ, and** | § | |
| **EMILIO ZAMORA,** § | | |
| **Plaintiffs,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 1:23-CV-1574** |
| | § | |
| **UNIVERSITY OF TEXAS AT** | § | |
| **AUSTIN, and JAY HARTZELL,** § | | |
| **In his official and individual capacity,** | § | **Jury Requested** |
| **Defendants** | § | |

_____

## ORIGINAL COMPLAINT

### Nature of the Action

1.    Plaintiffs Alberto Martinez ("Martinez"), and Emilio Zamora ("Zamora") (collectively "Plaintiffs"), individually and on behalf of all other Hispanic faculty ("Class Members") file this Complaint and putative class action against Defendant University of Texas at Austin ("UT") for violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq. ("Title VII") by engaging in unlawful national origin/Hispanic discriminatory employment practices to include disparate treatment and disparate impact claims of discrimination and claims of retaliation.

2.    Plaintiffs also seek relief for actions of Defendant Jay Hartzell ("Hartzell"), in his official and individual capacity, acting under color of state law, in violation of Plaintiffs' and the Class Members' civil rights, privileges, and immunities secured by the Civil Rights Act of 1871, the Fourteenth Amendment to the United States Constitution, and 42 U.S.C. §1981 and laws of the State of Texas resulting in injuries to Plaintiffs and Class Members with the action brought through 42 U.S.C §1983.

3.    Martinez, who is Hispanic of Puerto Rican origin, has been employed by UT in Austin, Texas, during the relevant periods of time as set out in the allegations in this Complaint through to

the present. UT and Hartzell treated Martinez differently than non-Hispanic employees, and employees that did not engage in protected activities, including in pay, promotions, and appointments to compensated positions of authority, in violation of the above listed statutes and Constitutional provisions.

4.    Zamora, who is Hispanic of Mexican origin, has been employed by UT in Austin, Texas, during the relevant periods of time as set out in the allegations in this Complaint through to the present. UT and Hartzell treated Zamora differently than non-Hispanic employees, and employees that did not engage in protected activities, including in pay, promotions, and appointments to compensated positions of authority, in violation of the above listed statutes and Constitutional provisions.

5.    In addition to their individual claims, Plaintiffs seek to represent a putative class of Hispanic faculty (full, Associate, and Assistant Professors) University-wide, or in the alternative, a class of solely Hispanic full Professors University-wide who have been adversely denied equal pay, promotions, and appointments to compensated positions of authority compared with similarly situated non-Hispanic faculty members, and employees that did not engage in protected activities or were not the beneficiaries of the protected activities of others, during the actionable period in this case.

6.    UT's and Hartzell's national origin/Hispanic disparate treatment of Plaintiffs and Class Members include knowing and intentional actions resulting in disparate and lower pay, denial of pay raises, denial of appointment to compensated positions of authority, and promotion of lesser qualified or unqualified non-Hispanic faculty, ignoring Plaintiffs' and Class Members' qualifications, performance, and work experiences that exceeded those of non-Hispanic employees, in favor of lesser qualified, less experienced, and lesser performing non-Hispanic faculty, which resulted in UT and Hartzell violating Plaintiffs' and Class Members' rights as protected by the statutes listed above.

7. UT's and Hartzell's national origin/Hispanic disparate impact treatment of Plaintiffs and Class Members include disparate and lower pay, denial of pay raises, denial of appointment to compensated positions of authority, and promotion of lesser qualified or unqualified non-Hispanic faculty.

8. UT's and Hartzell's intentional discrimination and/or disparate impact discrimination includes failure or refusal to prevent, eliminate, or rectify discrimination against, and thereby protect, Hispanic faculty from national origin discrimination and retaliation.

9. Accordingly, Plaintiffs and Class Members seek recovery from UT and Hartzell of all available damages in law and equity, caused by UT and Hartzell's illegal actions, including lost compensation, benefits, appointments, and promotions, or the equitable compensation equivalents during the entire actionable period in the past and also through to a reasonable period of time into the future as this Court determines just and equitable in this case.

## JURISDICTION and VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U. S. C. §1331 (Federal Question) and 28 U. S. C. §1343 (Civil Rights) for the claims brought under the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 2000e-5(f)(3).

11. Declaratory relief is authorized pursuant to 28 U. S. C. §§2201 and 2202 and Federal Rule of Civil Procedure Rule 57.

12. Venue is proper in this Court because UT is located within this District, Hartzell works within this District, UT conducts business in this District, most of the discriminatory employment practices hereafter alleged to be unlawful were committed within the jurisdiction of this District, and Plaintiffs reside within this District, therefore, venue is proper in this Court, 28 U.S.C. §1391(b) and (c).

13. Martinez has met/exhausted all required conditions precedents prior to the filing of

this suit. Martinez filed a complaint/charge of discrimination alleging national origin discrimination and retaliation against UT with the U.S. Department of Labor ("DOL"), which enforces Title VII for federal contractors, on or about October 14, 2020, within 300 days of UT's illegal actions. Martinez received his right to sue letter no earlier than September 29, 2023 and therefore Martinez's complaint is timely filed (i.e., 90 days following the receipt of the right to sue letter). See Exhibits A and B which contain copies of Martinez's charge and right to sue letter referenced above.

14.  Zamora has met/exhausted all required conditions precedents prior to the filing of this suit. Zamora filed a complaint/charge of discrimination alleging national origin discrimination and retaliation against UT with the U.S. Department of Labor ("DOL"), which enforces Title VII for federal contractors, on or about January 7, 2021, withing 300 days of UT's illegal actions. Zamora received his right to sue letter no earlier than September 29, 2023 and therefore Zamora's complaint is timely filed (i.e., 90 days following the receipt of the right to sue letter). See Exhibits A and B which contain copies of Zamora's charge and right to sue letter referenced above.

## JURY DEMAND

15.  Plaintiff requests a jury trial on all issues so triable.

## PARTIES

16.  Martinez is a citizen of the United States and the State of Texas and resides in Travis County, Texas.

17.  Zamora is a citizen of the United States and the State of Texas and resides in Travis County, Texas.

18.  UT is a state agency and may be served through its President, Jay Hartzell, as its top administrative representative.

19.  Hartzell is employed by UT and may be served in person at his place of employment in Austin, Texas, or at his residence.

## FACTUAL ALLEGATIONS

20.  Martinez is Hispanic (of Puerto Rican descent).

21.  Zamora is Hispanic (of Mexican descent).

22.  Plaintiffs are both full Professors in the History Department.

23.  Both Plaintiffs began having informal conversations in 2017 and 2018 regarding their shared sense that UT was paying them at a lower rate than fellow White faculty with equal lengths of service and comparable records of scholarship, teaching, and service.

24.  Both Plaintiffs went before the general faculty to propose an Equity Committee to conduct a preliminary analysis of the available data for their History Department.

25.  The department's Equity Committee was started on May 2, 2018 and subsequently the results showed disparity against Hispanic full Professors, but there was not a response to take any action to rectify the disparities identified.

26.  Both Plaintiffs then reached out to other Hispanic full Professors in other Departments and learned that they were also experiencing disparities compared to non-Hispanic full Professors.

27.  This group approached Vice Provost Dr. Edmund Gordon in the summer of 2018 who provided the Plaintiffs with charts that confirmed the Hispanic pay disparities.

28.  The group then approached the Provost's Council for Racial and Ethnic Equity and Diversity ("CREED") on September 18, 2018 to present the disparities for Hispanics and particularly the compensation disparities.

29.  CREED created seven subcommittees to ostensibly work on a Hispanic Faculty Initiative which delivered a report to the Provost at the end of that next academic year (May 2019. However, CREED did not conduct an analysis of the compensation disparities that the Plaintiffs had

brought to CREED back in September 2018.

30. Both Plaintiffs then gathered with six other Hispanic full Professors in different Departments in what they called an Independent Equity Committee and prepared the Hispanic Equity Report ("HER") completed on October 8, 2019 and conveyed to UT administrators.

31. The HER communicated the ongoing disparities that "constitute bias and discrimination against Hispanic employees." For example, the HER showed that in 2016-17, each of the 47 fulltime Hispanic full Professors were paid a mean annual compensation of $25,342 less than the 758 White fulltime full Professors (over 12% deficit).

32. The HER also reported pay deficits of $10,647 and $18,930 for Hispanic Associate and Assistant Professors, respectively, across UT.

33. Additionally, UT provided data charts to a Texas Representative, Gina Hinojosa, showing that Hispanic full Professors have consistently received lower salaries than White full Professors for nine (9) consecutive years (2010-2018) with an average each year of minus 12%.

34. More than a decade before, UT recognized a female faculty pay deficit of only 7%.[1] UT's central administration provided raises to the female faculty to rectify this disparity.

35. The Plaintiffs were also informed by Edmund Gordon that UT had also worked to rectify the pay disparities identified with the Black faculty after the female faculty disparities were addressed by UT.

36. At Faculty Council, UT's President Gregory Fenves acknowledged the need to address the disparity affecting Hispanics, just as it had done for female professors and Black professors; however, subsequently UT did not respond in the same or similar way to remedy the much larger Hispanic pay disparity.

---

[1] This was reported in the 2008 Gender Equity Report. That is, "on average across the University in 2007, female full professors earned $9,028 less than men."

37.  After UT acknowledged the female pay disparity and the Black pay disparity, UT did not create or establish a process to prevent, eliminate, or rectify disparities between faculty members based on race, national origin, gender or other protected classes either within each faculty rank or within individual Departments or Colleges, or even University-wide.

38.  In spite of learning that Hispanic faculty have experienced an even greater pay disparity than the female faculty, UT has still failed or refused to take action to fix the established practices, policies or actions that result in verifiable discriminatory pay disparities based on protected categories as compared to simply randomized pay disparities.

39.  The Provost, Maury McInnis, and UT President at that time, Greg Fenves, both publicly acknowledged in writing and verbally on multiple occasions that the Hispanic pay disparity was unfortunate and regrettable.

40.  Consequently, Provost McInnis allocated $3 million for Equity Raises in the Spring of 2020. Given the most recent reports and work by Plaintiffs and others identifying the latest pay disparities among Hispanic faculty, and no other disparities had been identified, Plaintiffs were expecting that Hispanic faculty pay disparities would be rectified substantially, if not in full.

41.  However, Fenves and McInnis both left UT for other positions at other universities before that money was allocated.

42.  The result was that only $1.7 million of those funds was spent on pay raises and a majority of those pay raises did not go to Hispanic faculty members that had disparate pay issues that the HER had identified.

43.  Plaintiffs both engaged in the protected activities of investigating the pay disparities of Hispanic faculty across the University on uncompensated committees in 2018 and 2019. These committees communicated directly with UT representatives including President Hartzell in August 2020.

44. President Hartzell did not respond to the Plaintiffs' committee formal communication on discrimination sent to Hartzell in August 2020.

45. Instead, a couple of months later, President Hartzell created a committee called the Equity Review Process Consultative Committee ("ERPCC") in November 2020, whose job it was apparently to review applications from outside contractors to perform a statistical analysis into disparities in faculty salaries.

46. Martinez was appointed to this uncompensated committee.

47. The ERPCC made a recommendation for which contractor proposal to go with and that contractor was selected and paid a substantial amount of money but a couple of months later in February of 2021 the contractor's work was halted without any report, the ERPCC was apparently disbanded and a scheduled meeting with President Hartzell was cancelled.

48. There has been no known targeted or unified effort by UT or Hartzell to prevent, eliminate, or rectify the Hispanic faculty disparities.

49. Instead, it appears that UT is sweeping the Hispanic disparity issues under the rug.

50. Following Martinez's protected activities in 2018, 2019, and 2020, UT took several adverse actions against Martinez.

51. In August 2019, Martinez specifically expressed interest in the roles of Chair, Associate Chair, IHS Director, and other positions. Martinez never received any communications regarding his interest in or the opportunity to obtain any of the positions.

52. Martinez applied for the position of Chair of the History Department and was interviewed in early 2020.

53. On April 28, 2020, Martinez was informed that the position was being given to Prof. Daina Berry (non-Hispanic), who had not applied for the position and had been the chair of the selection committee for that position.

54.  On May 13, 2020, Martinez expressed interest in the position of Associate Chair, but was never appointed or otherwise received communication about the position.

55.  In July 2020, Martinez learned, but not from UT officials, that he was denied an Equity Raise from the $3 million fund that Provost McInnis had allocated. Although Martinez had received a raise from a different fund, his pay was still below the mean and below other full Professors in the History Department based on publications and other objective criteria.

56.  On June 17, 2022, Plaintiffs were informed that Prof. Alan Tully (non-Hispanic) had been appointed to the position of Interim Chair of the History Department, even though there was no notice of the opening and no ability for Martinez to apply.  Tully had been Chair for 12 years some time ago.

57.  On February 7, 2023, a new Interim Chair of the History Department was announced as Prof. Martha Newman (non-Hispanic), who was the chair of the selection committee for the available Chair position to which Martinez had applied. The position opening was closed without explanation and without interviews. Newman was now the second Interim Chair appointed without the having applied or anyone being allowed to compete for the position.

58.  On September 1, 2023, Martinez received a $1,000 raise, but this was much less than the Equity raise that Martinez had requested to rectify his disparate pay compared with lower qualified and producing non-Hispanic full Professors in the History Department, as well as those who had not engaged in protected activity.

59.  UT intentionally ignored Martinez's qualifications and experience when compared to the selected non-Hispanic person promoted to Chair of the History Department, who was less qualified.

60.  UT refused to promote Martinez to Chair of the History Department because Martinez is Hispanic and/or because Martinez engaged in protected activities opposing discrimination in the

workplace.

61.  Zamora has not been appointed to a compensated position of authority in his Department for years, to include both before and after he engaged in protected activities pointing out Hispanic faculty disparities of pay and experience at UT.

62.  Putative class members are tentatively current and former UT tenured and tenure track faculty of Hispanic origin that were employed by UT at any time during the actionable period in this case and will meet the definition of the Class as will be specified following discovery of class-based certification issues and by the Class certification deadline.

63.  At all times relevant to this case, Plaintiffs and Class Members met or exceeded UT's expectations and requirements for employment in their assigned positions.

64.  Plaintiffs and Class Members met or exceeded the qualifications for their positions on the faculty in which they were employed prior to and during the actionable periods at issue in this case.

65.  Plaintiffs have consistently performed at or above the median performance levels of the objective criteria of publications, teaching, and service in their department during their full Professorships at UT.

66.  Plaintiffs and Class Members have consistently[2] been paid less than substantial numbers of non-Hispanic faculty of the same rank (i.e., full Professor, Associate Professor, and Assistant Professor) and within the same Department that have lesser experience, lesser qualifications, and lesser objective measures of performance than the Plaintiffs and Class Members.

67.  Plaintiffs and Class Members have been eligible and qualified for promotions but have been consistently denied those promotions while UT promoted non-Hispanic faculty members with lesser experience, lesser qualifications, and lesser objective measures of performance than the

---

[2] Over multiple decades.

Plaintiffs and Class Members.

68.  Plaintiffs and Class Members have been eligible and qualified for appointments to compensated positions of authority but have been consistently denied those appointments while UT appointed non-Hispanic faculty members with lesser experience, lesser qualifications, and lesser objective measures of performance than the Plaintiffs and Class Members.

69.  UT has a history of discriminating against Hispanic faculty to include, but not be limited to the following adverse actions:

- consistently disparate pay,
- denials of promotion,
- denials of appointments to compensated positions of authority,
- failure to rectify disparities impacting Hispanic faculty,
- fewer promotions to endowed positions.

70.  Plaintiffs and Class Members have personally experienced and witnessed disparate treatment against Hispanic faculty at UT and a refusal by UT and Hartzell to take any action to prevent, eliminate, or rectify the disparate treatment of Hispanic faculty for a period of years both prior to and through the actionable period in this case to the present.

71.  As a result of the consistent disparate treatment of Plaintiffs and Class Members by UT and Hartzell, Plaintiffs and Class Members have lost the following employment benefits: pay/compensation, career advancement, retirement value, and interest.

72.  The disparate treatment and discriminatory actions by UT and Hartzel of Plaintiffs and putative class members, including the ongoing failure to address, prevent or rectify  discrimination against Hispanic faculty, has caused loss of pay/compensation, career advancement, retirement benefits, as well as  compensatory damages of emotional distress, damage to reputation, and other damages, both in the past and continuing into the future.

73.  UT and President Hartzell's facially neutral policies and practices that have created a discriminatory disparate impact on the Plaintiffs and putative class members have caused loss of

pay/compensation, career advancement, retirement benefits, as well as other damages, both in the past and continuing into the future.

74.  Hartzell's discriminatory and disparate treatment conduct, including the ongoing failure to address, prevent or rectify discrimination against Hispanic faculty, is intentional, willful, egregious, and deliberate. As a result, Hartzell is subject to an assessment of punitive damages appropriate to the economic and non-economic damages and harms suffered by the Plaintiffs and putative class members, so as to avoid future illegal conduct by UT against Hispanic faculty as well as faculty from protected classes.

## VIOLATION OF TITLE VII
## DISPARATE IMPACT: PAY, PROMOTIONS, AND APPOINTMENTS

75.  Plaintiffs reallege and incorporate the allegations contained in this complaint as if fully stated herein.  This cause of action is in addition to or in the alternative to the other claims in this complaint.

76.  At all relevant times herein, Plaintiffs have been employees of UT and under Hartzell's authority since is hiring as President of UT, covered by and within the meaning of § 701 of Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e.

77.  Plaintiffs are members of a protected group based on their Hispanic national origins.

78.  UT and Hartzell maintained and implemented facially neutral policies and practices that resulted in Plaintiffs being disparately impacted with disparate and lower pay, promotions, and appointments to compensated positions of authority during the actionable period when compared with similarly situated non-Hispanic faculty even though the Plaintiffs were more qualified and experienced than the similarly situated non-Hispanic faculty members.

79.  UT's and Hartzell's facially neutral policies and practices include subjective decision making, processes and practices regarding pay/compensation, promotions, and appointments to

compensated positions of authority which have had and continue to have disproportionally negative impact on what Hispanic faculty receive compared with what similarly situated non-Hispanic faculty receive and an admitted absence of a process, practice, database or failure to take other actions to monitor decisions regarding pay, promotions, and appointments to compensated positions of authority for their impact on Hispanic faculty as compared to similarly situated non-Hispanic faculty, thereby allowing a discriminatory impact against Hispanics when compared with similarly situated non-Hispanic faculty including in pay, promotions, and appointments to compensated positions of authority. Additional particular decision processes and illegal acts may be identified through the course of discovery for the expressed purpose of obtaining information and evidence of disparate impact and class certification claims.

80.   The processes and practices described in this Complaint have been utilized by UT on an ongoing basis for many years, and by Hartzell since his being hired as President prior to Plaintiffs filing charges with the DOL.

81.   Statistical analysis derived from an examination of UT's pay data has shown and will show Plaintiffs were disproportionately affected by UT's and Hartzell's illegal actions, including decision making processes impacting pay, promotions, and appointments to compensated positions of authority.

82.   Additional particular decision processes and illegal acts having a disparate discriminatory impact may be identified through the course of discovery.

83.   As a result of UT's and Hartzell's facially neutral policies and practices, Plaintiffs have suffered damages as set out herein.

<u>Putative Class Action</u>

84.   In addition to their individual impact claims, Plaintiffs seek to certify a class of Hispanic tenured and tenure track faculty members who were affected by the illegal actions of UT and Hartzell

that have had a discriminatory disparate impact, including subjective and arbitrary decision processes set forth in this Complaint regarding pay/compensation, promotions, and appointments to compensated positions of authority.

85.  Plaintiffs seek to represent all tenured and tenure track Hispanic faculty who were affected during the actionable period in this case when UT has violated Title VII and Hartzell has violated the Equal Protection Clause of the 14th Amendment of the Constitution, 42 U.S.C. 1981, both brought via 42 U.S.C. 1983.

86.  Statistical analysis derived from an examination of UT's pay data has shown and will show that tenured and tenure track Hispanic faculty like the Plaintiffs were disproportionately affected by UT's and Hartzell's illegal actions, including decision making processes impacting pay, promotions, and appointments to compensated positions of authority, across UT as a whole or across all full Professors at UT.

87.  The ongoing, discriminatory subjective decision processes regarding pay/compensation, promotions, and appointments to compensated positions of authority have affected a putative class of individuals so numerous[3] that joinder of all members is impracticable.

88.  The questions of law or fact common to Plaintiffs are common to the Class Members they seek to represent.

89.  UT and Hartzell's illegal actions have caused significant damage to Plaintiffs and the putative class they seek to represent, including actual or economic damages for lost pay and compensation, benefits, appointments, and promotions, past and future. Accordingly, Plaintiffs and

---

[3] All Hispanic faculty across UT amounts to more than 192. That is, 192 does not include all of the Class Members that are Hispanic faculty members that worked at UT since December 19, 2019, but are no longer employed by UT who were harmed during the actionable period in this case. Also, only considering only the class of Hispanic full Professors across UT, still results in the same conclusion since that number amounts to more than 71 with the same number of former full Professors that have left UT since December 19, 2019 are not accounted for at this point.

the equitable class they seek to represent seek all actual or economic damages as well as equitable relief including but not limited to:  1) benefits not measured as compensatory damages, including relief to offset any damage to their reputations, 2) injunctive relief prohibiting UT and Hartzell from subjecting future Hispanic faculty to discriminatory pay, promotion, and appointments to compensated positions of authority, 3) injunctive relief requiring UT and Hartzell to promote Hispanic faculty and former Hispanic faculty who were denied promotions in favor of lesser qualified non-Hispanic faculty resulting in disparate impact, and 4) other forms of equitable relief available under Title VII, or the Equal Protection Clause of the 14th Amendment of the Constitution and 42 U.S.C. 1981, both brought via 42 U.S.C. 1983.

**VIOLATION OF TITLE VII**
**DISPARATE TREATMENT: PAY, PROMOTIONS, AND APPOINTMENTS**

90.  Plaintiffs reallege and incorporate the allegations contained in this complaint as if fully stated herein.  This cause of action is in addition to or in the alternative to the other claims in this complaint.

91.  At all relevant times herein, Plaintiffs have been employees of UT during the actionable period, covered by and within the meaning of § 701 of Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e.

92.  Plaintiffs are members of a protected group based on their Hispanic national origins.

93.  UT's and Hartzell's illegal actions include denying or refusing to Plaintiffs equitable pay, promotions, and appointments to compensated positions of authority during the actionable period even though the Plaintiffs were more qualified and experienced than the similarly situated non-Hispanic faculty members.

94. UT's and Hartzell's illegally actions, including failing and refusing to Plaintiffs equitable pay, promotions, and appointments to compensated positions of authority were knowing,

intentional and pretextual for their discriminatory motives against Plaintiffs due to their Hispanic/national origin protected class.

95.  The discriminatory pay, promotions, and appointments to compensated positions of authority described in this Complaint have been utilized by UT on an ongoing basis for many years, and by Hartzell since his being hired as President prior to and since Plaintiffs' filing of charges with the DOL.

96.  As a result of UT's and Hartzell's illegal actions against Plaintiffs have suffered and seek to recover economic and non-economic damages as set out herein.

97.  As a result of Hartzell's knowing failure or refusal to prevent, eliminate, or rectify the disparate treatment of Hispanic faculty, despite his knowledge of the disparities suffered by Hispanic faculty compared with similarly situated non-Hispanic faculty, Hartzell's actions were intentional, willful, egregious, and deliberate and therefore subject to an assessment of punitive damages appropriate to the economic and non-economic damages and harms suffered by the Plaintiffs, so as to avoid future illegal conduct by UT against Hispanic and other faculty from protected classes.

Putative Class Action

98.  In addition to their individual disparate treatment claims, Plaintiffs seek to certify a class of Hispanic tenured and tenure track faculty members who were subjected to disparate treatment and discriminatory actions resulting in disparate and lower pay/compensation, promotions, and appointments to compensated positions of authority when compared to what the similarly situated non-Hispanic faculty received.

99.  Additional discriminatory adverse actions may be identified through the course of discovery for the expressed purpose of obtaining information and evidence of disparate treatment and class certification claims.

100. Plaintiffs seek to represent all Hispanic tenured and tenure track faculty that have

experienced Hispanic/national origin discrimination during the actionable period in this case for UT's violations of Title VII and Hartzell's violations of the Equal Protection Clause of the 14th Amendment of the Constitution, 42 U.S.C. §1981, both brought via 42 U.S.C. §1983.

101. The ongoing, discriminatory actions regarding pay/compensation, promotions, and appointments to compensated positions of authority have been taken against a putative class of individuals so numerous[4] that joinder of all members is impracticable.

102. The questions of law or fact common to Plaintiffs are common to the Class Members they seek to represent.

103. UT's and Hartzell's illegal actions include decisions regarding pay, promotion, and appointment to compensated positions of authority have resulted in illegally discriminatory lower pay, fewer promotions, and fewer appointments to compensated positions of authority for Hispanic tenured and tenure track faculty compared with similarly situated non-Hispanic faculty.

104. Hartzell's illegal actions, including failure and/or refusal to prevent, eliminate, or rectify the disparate treatment of Hispanic faculty, despite his knowledge of the disparities suffered by Hispanic faculty compared with similarly situated non-Hispanic faculty, were intentional, willful, egregious, and deliberate and therefore subject to an assessment of punitive damages appropriate to the economic and non-economic damages and harms suffered by the Plaintiffs, so as to avoid and prevent future illegal conduct against Hispanic faculty.

105. UT and Hartzell's illegal actions have caused significant damage to Plaintiffs and the putative class they seek to represent, including actual or economic damages for lost pay and

---

[4] There are approximately 192 or more Hispanic tenured and tenure track faculty members employed by UT, as well as Hispanic faculty members that worked at UT during the actionable period but are no longer employed by UT, who were harmed by UT and/or Hartzell's illegal actions described herein. Also, only considering only the class of Hispanic full Professors across UT, there are approximately 71 or more full Professors, as well as Hispanic full Professor that worked at UT during the actionable period but are no longer employed by UT.

compensation, benefits, appointments, and promotions, in the past and future. Plaintiffs and the putative class they seek to represent have also suffered compensatory damages, including emotional pain and suffering, damage to reputation, loss of enjoyment of life, mental anguish and other losses. Accordingly, Plaintiffs and the equitable class they seek to represent seek all actual or economic damages, compensatory damages, punitive damages, as well as equitable relief including but not limited to: 1) benefits not measured as compensatory damages, including relief to offset any damage to their reputations, 2) injunctive relief prohibiting UT and Hartzell from subjecting future Hispanic faculty to discriminatory pay, promotion, and appointments to compensated positions of authority, 3) injunctive relief requiring UT and Hartzell to promote Hispanic faculty and former Hispanic faculty who were denied promotions in favor of lesser qualified non-Hispanic faculty resulting in disparate impact, and 4) other forms of equitable relief available under Title VII, or the Equal Protection Clause of the 14th Amendment of the Constitution and 42 U.S.C. 1981, both brought via 42 U.S.C. 1983.

## VIOLATION OF TITLE VII
## RETALIATION: PAY, PROMOTIONS, AND APPOINTMENTS

106. Plaintiffs reallege and incorporate the allegations contained in this complaint as if fully stated herein. This cause of action is in addition to or in the alternative to the other claims in this complaint.

107. At all relevant times herein, Plaintiffs have been employees of UT and covered by and within the meaning of § 701 of Title VII of the Civil Rights Act of 1964, 42 U. S. C. §2000e.

108. Plaintiffs engaged in protected activities individually and the protected activities were engaged in on behalf of the Class Members during the actionable period in this case, including opposing discrimination towards Hispanic faculty internally as well as filing the charge of discrimination/complaint with the DOL. Plaintiffs' protected activity was known by UT and

Hartzell, including communications in writing via reports and emails, and verbally in meetings with UT and Hartzell.

109. Following the Plaintiffs' protected activities of opposing discrimination in the workplace and in retaliation for those protected activities, UT and Hartzell took adverse actions against the Plaintiffs, including refusing and failing to promote Plaintiffs, provide raises in compensation and benefits, or appointments to compensated positions of authority or otherwise rectify the disparate treatment experienced by Plaintiffs which continues to exacerbate and have an ongoing discriminatory effect.

Putative Class Action

110. In addition to their individual retaliation claims, Plaintiffs seek to certify a class of Hispanic tenured and tenure track faculty members who also engaged in protected activities similar to Plaintiffs and were subsequently subjected to retaliatory actions resulting in continued or exacerbated disparate treatment, including lower pay/compensation, promotions, and appointments to compensated positions of authority when compared to what the similarly situated faculty who had not engaged in protected activity received.

111. In addition to their individual retaliation claims, Plaintiffs seek to certify a class of Hispanic tenured and tenure track faculty members who also suffered retaliatory adverse action from UT and Hartzell based on the protected activities of Plaintiffs, since each member of the putative class was an intended benefactor of Plaintiff's protected activities and the putative class members, and UT and Hartzell took employment actions that were targeted at and intended to negatively affect the putative class members as a whole or at least indistinguishably, including refusing and failing to promote Hispanic faculty, provide raises in compensation and benefits, or appointments to compensated positions of authority or otherwise rectify the disparate treatment experienced by the Class Members, such that every member of the putative class is protected by the anti-retaliation

provision of Title VII and 42 U.S.C. §1981.

112. Additional retaliatory adverse actions may be identified through the course of discovery for the expressed purpose of obtaining information and evidence of retaliation and retaliatory intent and class certification claims.

113. The retaliatory pay, promotions, and appointments to compensated positions of authority described in this Complaint that occurred after the protected activities engaged in by the Plaintiffs and some putative Class Members on behalf of all Class Members maintained or exacerbated the disparate pay, promotions, and appointments to compensated positions of authority that Hispanic faculty have suffered when compared with what similarly situated non-Hispanics have been provided.

114. Plaintiffs seek to represent all Hispanic faculty Class Members that have experienced retaliation during the actionable period in this case when UT has continuously violated Title VII and Hartzell has continuously violated the Equal Protection Clause of the 14th Amendment of the Constitution, 42 U.S.C. §1981, both brought via 42 U.S.C. §1983.

115. The ongoing, retaliatory actions regarding pay/compensation, promotions, and appointments to compensated positions of authority have been taken against a putative class of individuals so numerous that joinder of all members is impracticable.

116. The questions of law or fact common to Plaintiffs are common to the Class Members they seek to represent.

117. Statistical analysis derived from an examination of Plaintiffs' and UT's pay data has shown and will show that Hispanic faculty like the Plaintiffs and the putative Class Members were treated differently and worse than similarly situated faculty that did not engage in protected activities or were not the intended beneficiaries of concerted protected activities. by UT's and Hartzell's decision making processes resulting in disparate pay, promotions, and appointments to compensated

positions of authority across UT as a whole or across all full Professors at UT.

118. UT's and Hartzell's retaliatory decisions regarding pay, promotion, and appointment to compensated positions of authority have resulted in illegally retaliatory lower pay, fewer promotions, and fewer appointments to compensated positions of authority for Hispanic faculty compared with similarly situated non-Hispanic faculty that also did not engage in protected activities or were not the intended beneficiaries of concerted protected activities.

119. Hartzell's illegal and retaliatory actions towards the Class Members were intentional, willful, egregious, and deliberate and therefore subject to an assessment of punitive damages appropriate to the economic and non-economic damages and harms suffered by the Class Members, so as to avoid and prevent future illegal conduct against Hispanic faculty and other discriminatory conduct.

120. UT and Hartzell's illegal actions have caused significant damage to Plaintiffs and the putative class they seek to represent, including actual or economic damages for lost pay and compensation, benefits, appointments, and promotions, in the past and future. Plaintiffs and the putative class they seek to represent have also suffered compensatory damages, including emotional pain and suffering, damage to reputation, loss of enjoyment of life, mental anguish and other losses. Accordingly, Plaintiffs and the equitable class they seek to represent seek all actual or economic damages, compensatory damages, punitive damages, as well as equitable relief including but not limited to:  1) benefits not measured as compensatory damages, including relief to offset any damage to their reputations, 2) injunctive relief prohibiting UT and Hartzell from subjecting future Hispanic faculty to discriminatory pay, promotion, and appointments to compensated positions of authority, 3) injunctive relief requiring UT and Hartzell to promote Hispanic faculty and former Hispanic faculty who were denied promotions in favor of lesser qualified non-Hispanic faculty resulting in disparate impact, and 4) other forms of equitable relief available under Title VII, or the Equal

Protection Clause of the 14th Amendment of the Constitution and 42 U.S.C. 1981, both brought via 42 U.S.C. 1983.

### VIOLATION OF 42 U.S.C. § 1983, 42 U.S.C. § 1981, AND FOURTEENTH AMENDMENT EQUAL PROTECTION BY JAY HARTZELL, in his official and individual capacities

121. Plaintiffs reallege and incorporate the allegations contained in this complaint as if fully stated herein.  This cause of action is in addition to or in the alternative to the other claims in this complaint.

122. At all times alleged herein, Defendant Hartzell was acting under color of law in his official and/or individual capacity.

123. The Equal Protection clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1981 require that no citizen may be denied equal access to the rights, privileges, and immunities secured by the Constitution and its laws on the basis of their race/national origin nor discriminated against in any way based on race/national origin.

124. Hartzell intentionally deprived Plaintiffs and Class Members of equal access to rights, privileges, and immunities, and otherwise discriminated against Plaintiffs and Class Members based upon their national origin, by unlawfully denying Plaintiffs and Class Members equal pay/compensation, promotions, appointments to compensated positions of authority both in the past and continuing into the future as described herein.

125. Plaintiffs' and Class Members' Constitutional and statutory rights were clearly established at the time of Hartzell's misconduct because a reasonable person in Hartzell's position would understand that such acts would cause a deprivation of Plaintiffs' and Class Members' rights.

126. At all times material herein, Hartzell intentionally discriminated against Plaintiffs and Class Members based on their national origin set forth herein all in violation of the Equal Protection provision of the 14th Amendment to the Constitution and 42 U.S.C. §1981 recoverable through this

42 U.S.C. §1983 action.

127. Hartzell intentionally discriminated against Plaintiffs and Class Members by unlawfully and discriminatorily denying Plaintiffs and Class Members equal pay/compensation, promotions, appointments to compensated positions of authority when compared to what similarly situated non-Hispanic faculty received.

128. Hartzell's intentional and deliberate indifference to Plaintiffs' and Class Members' Civil Rights was the moving force behind Plaintiffs' and Class Members' deprivation of their constitutional and statutory rights and quality of life and freedoms that other national origins outside of Plaintiffs' and Class Members' protected class are provided.

129. As a result of Hartzell's illegal actions against Plaintiffs and Class Members, Plaintiffs and Class Members have suffered economic and non-economic damages as set out above.

130. As a result of the intentional, willful, egregious, and deliberate acts by Hartzell against Plaintiffs and Class Members, Plaintiffs and Class Members are entitled to punitive damages against Hartzell so as to avoid and prevent future illegal conduct against Hispanic faculty and other discriminatory conduct.

## ATTORNEYS' FEES AND COSTS

131. Plaintiffs were forced to retain attorneys to pursue this action to seek remedy for UT and Hartzell's illegal actions and request all reasonable and attorney fees and costs.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiffs and Class Members Pray for an order entering Judgment against UT and Hartzell, and awarding Plaintiffs and Class Members the following relief:

   a. An order of this Court granting actual or economic damages, including lost pay, compensation and benefits, past and future;

b. An order of this Court granting equitable, statutory or other damages including

requiring UT to promote Plaintiffs and Class Members to compensated positions of

authority, provide back pay at an appropriate amount, and set a pay rate going

forward and seniority that would be equitable had Plaintiffs and Class Members

been promoted when they should have first obtained each promotion;

c. In the alternative, an order of this Court granting equitable, statutory or other damages

including back and front pay should the Court determine promotions to the

appropriate positions at this time would not be the more appropriate equitable

remedy for Plaintiffs and Class Members;

d. An order of this Court granting equitable, statutory or other damages restricting

retaliatory actions against the Plaintiffs and Class Members;

e. An award of noneconomic compensatory damages as determined by a trial in this matter

in the fullest amount allowed by law to Plaintiffs and Class Members;

f. Punitive damages in the amount determined appropriate on behalf of Plaintiff and

putative class member;

g. An award of attorney's fees and costs both through trial and on appeal, should that be

required in this matter;

h. An award of pre and post-judgment interest in the highest lawful amount; and

i. An order of this Court granting Plaintiffs and Class Members further relief that it

deems just and equitable.

Respectfully submitted,

*/s/ Robert Notzon*
Robert Notzon
The Law Office of Robert Notzon
Texas Bar No. 00797934
1502 West Avenue

Austin, Texas 78701
Robert@NotzonLaw.com
(512) 474-7563
(512) 852-4788 facsimile

*/s/ Robert W. Schmidt*
Robert W. Schmidt
Robert W. Schmidt Law Firm, PLLC
State Bar No. 17775429
bob@robertwschmidt.com
1502 West Avenue
Austin, Texas 78701
Telephone:  (512) 484-2276
Facsimile:  (512) 537-0708


**ATTORNEYS FOR PLAINTIFFS**

Ex. A

From:        Alberto Martinez
To:          OFCCP-SW-CC4 - ESA; Rodriquez, Juan J - OPA; Rideaux, Chauntra D. - OPA
Subject:     Fwd: OFCCP Complaint Form
Date:        Thursday, October 15, 2020 12:13:04 AM

To whom it may concern,

I received a phone call from Ms. Chanel Richards-Stelly of OFCCP requesting that I submit my complaint through the online portal. So, I tried to submit my complaint online, but despite countless efforts it was not possible because the system constantly stated that I had used special characters. In fact, I had not, since I even tried to submit my complaint after removing all punctuation signs, all numbers, all spaces, and even using programs online that remove all hidden or unusual text. So, finally I had to give up and submit the complaint as it appears below. (I tried to find Ms. Richards-Stelly's email online, but no luck.)

However, in any case, do please append the text which I here include, since the online system did not allow it in any format:

COMPLAINT:

1. What actions the employer took against you.
In 2017-18 I was a member of the Salary Committee of the Department where I work at the University of Texas. I found out about disparities in salaries, including my own. This led to the creation of an Equity Committee within the Department, on May 2, 2018. Subsequently, I communicated with other Hispanic employees (in my same job category and rank: full Professor), and we realized that they too were underpaid compared to their non-Hispanic peers. In summer 2018, we approached an administrator, Vice Provost Dr. Ted Gordon, and asked him to about salaries. He provided charts that confirmed what we had found. Consequently we met with the Provost's Council for Racial and Ethnic Equity and Diversity (CREED), on Sept. 18, 2018, to present problems affecting Hispanics, especially disparities in compensation. CREED therefore convened seven subcommittees to work on a "Hispanic Faculty Initiative." By May 2019, their Report was delivered to the Provost; however, we were disappointed that this report did not analyze compensation. Therefore, we painstakingly prepared the Hispanic Equity Report, completed on Oct. 8, 2019, which formally notified U.T. administrators about ongoing inequities that "constitute bias and discrimination against Hispanic employees." E.g., it shows that in FY 2016-17, the 47 full-time Hispanic full Professors at UT Austin were each paid a mean annual compensation of $25,342 less than the 758 White full professors who were full-time, a difference of -13 percent. This difference was evident in my own salary too. This disparity is worse than the grave disparity between the compensation of male and female faculty identified in UT's 2008 Gender Equity Report, that: "On average across the University in 2007, female [full] professors earned $9,028 less than men." (That disparity of -7% was subsequently remedied by means of central administration raises for female faculty.)
2. Why you believe those actions were based on your: race; color; religion; sex; sexual orientation; gender identity; national origin; disability; veteran status; and/or inquiries about, discussions, or disclosures of your pay or the pay of others; and/or in retaliation for filing a complaint, participating in discrimination proceedings, opposing unlawful discrimination, or exercising any other rights protected by OFCCP.
I know that these allocations of disparate pay are based on ethnicity (being Hispanic) and race (not being non-Hispanic White employees or others), because these disparities are:
(a) distinct to Hispanic full Professors, that is, Asian, White, Black employees are not affected by such a large, constant annual pay gap;
(b) consulting multiple Hispanic professors we found that we did not get promotions to positions of leadership, unlike our non-Hispanic colleagues;
(c) we analyzed salaries and resumes of 90 faculty in the College of Liberal Arts, including 13 Hispanic full professors in four large departments, constituting 27 percent of all Hispanic full Professors at UT Austin, and we found that most of them are paid near the bottom of the pay scales, even though 54 percent are in the Top 10 most published in their departments;
(d) an analysis of covariance with one-tailed hypothesis testing, adjusted for covariates of gender, years employed, and publications, showed that the mean compensation of Hispanic faculty was statistically significantly lower than the mean compensation of White faculty;
(e) the salary disparity remains even when we statistically controlled for departments, confirming that it is Not because

one is comparing apples to oranges (for example, White professors in engineering with Hispanic professors in Education);

(f) also, we found a near zero correlation between the compensation and quantity of publications of only Hispanic faculty, contrary to the strong correlations found for Asian, Black, and White faculty;

(h) the Editorial Boards of prominent state newspapers, the Austin American-Statesman, and the Houston Chronicle, have publicly called upon UT Austin to urgently fix this pay disparity. Yet UT administrators have not;

(g) most importantly, UT Austin provided IRRIS charts to Representative Gina Hinojosa, showing that in contrast to White full professors, Hispanic full professors have constantly had lower salaries for 9 consecutive years (2010-18), an average of 12 percent lower per year;

3. When the employer actions happened, where they happened, and who was involved.

The salaries of professors like myself are set by Department Chairs and Deans. Each October 1st, the new salaries become effective, in payroll. Yet the University has no structure in place to ensure than employees of a higher rank (for example, Professor) are paid more than employees of a lower rank (for example, Associate Professor, or Assistant Professor), therefore, when Chairs and Deans allocate raises and new employee salaries, they manifest carelessness, bias, or favoritism, by granting higher salaries to some employees. Throughout the years, the sum of such acts creates a cumulative effect of discrimination against Hispanic employees, above all, as evidenced in our lower pay, in nearly all departments of the university, and contrary to our productivity and rank.

4. What harm, if any, you or others suffered because of the alleged discrimination or retaliation.

During the last nine or ten years, I and other Hispanic full Professors have suffered the damage of annual disparate pay, in the amount of 12% less than our non-Hispanic White coworkers, plus loss of interests on such lost earnings. Also, social capital, respect, inclusion, and promotions to positions of leadership are granted more often to faculty with higher salaries, while those of us who are Hispanic and underpaid are granted fewer promotions to positions or leadership, awards, opportunities, etc. We quantified this in terms of our lack of endowment awards, teaching awards, and administrative roles.

5. What explanation, if any, your employer or people representing your employer offered for their actions.

In writings and in person, the past President Gregory Fenves and the Provost Maurie McInnis both acknowledged (Oct.18, Oct.30, Nov.11, 2019, Feb.18, Feb.21, 2020) that inequities in salaries do exist and that they affect Hispanic faculty. They spoke of it as something unfortunate and regrettable, but did not offer a clear explanation. McInnis did say that the university is "very decentralized" so that problems do arise and accumulate. And, she said that the university lacked centralized data systems to track such disparities. However, McInnis and Fenves both resigned in mid-2020. We wrote a formal letter to the new President and Provost on August 3, but received no reply.

6. Who was in the same or similar situation as you and how they were treated. Include information such as the race, color, religion, sex, sexual orientation, gender identity, national origin, disability, or protected status of these individuals, if known.

In 2008, our university recognized a grave disparity between the compensation of male and female faculty, which it identified in UT's 2008 Gender Equity Report, that: "On average across the University in 2007, female [full] professors earned $9,028 less than men." UT administrators rightly recognized that that pay gap was unacceptable, and set to fix it. That disparity of -7 percent was subsequently remedied by means of central administration raises for female faculty. Presently, the pay gap for Hispanic full Professors is far larger, namely -12% per year. We estimate that, 47 affected Hispanic full Professors (both men and women), as of 2017, plus multiple others in lower ranks, maybe around 10 or 20 Associate Professors. In the former group the differences are statistically very large (-12%). In the latter group, the differences affect more clearly certain individuals, not necessarily most of them. However, if one does not "control for departments" as was not done in the OFCCP intervention with Princeton University, then clearly Hispanic professors in all ranks are affected. Our Hispanic Equity Report found annual pay gap differences (compared to non-Hispanic White employees) of -$25,342 for Hispanic full Professors, -$10,647 for Hispanic Associate Professors, and -$18,930 for Hispanic Assistant Professors, at UT Austin.

7. What information you have about federal contracts the company that you worked for had at the time of the discrimination or retaliation you describe in this complaint.

Here are many federal contracts:

https://gov.data2www.com/vendor/USA/127688380

They include many contracts with the Department of Defense, but I'm sure there are contracts with other federal agencies too.

The rest of my submission is below.
Thank you,

Dr. Alberto A. Martinez
Professor, UT Austin

---------- Forwarded message ---------
From: **Department of Labor/OFCCP** <OFCCP_Complaints@dol.gov>
Date: Wed, Oct 14, 2020 at 11:56 PM
Subject: OFCCP Complaint Form
To: <almartinez1905@gmail.com>



# Complaint Involving Employment Discrimination by a Federal Contractor or Subcontractor

<u>Please read the instructions before completing this form.</u>

OMB: 1250-0002
Expires: 5/31/2023

Reset Form    Print Form Submit

| How can we reach you? | Name (First, Middle, Last): Alberto Antonio Martinez |
|---|---|
| | Street Address: 409 E 38th St, Apt 203 |
| | City: Austin |
| | State: TX  Zip Code: 78705 |
| | Telephone Number: 5125172755 |
| | Home |
| | Work |
| | Cell |
| | E-mail: almartinez1905@gmail.com |
| | **Have you filed these allegations of employment discrimination with another federal or local agency?** |
| | Yes |
| | No |
| | If yes, provide the agency and date filed: _____ |
| | Contact Name: _____ Phone Number: _____ |
| Who can we contact if we cannot reach you? | Name (First, Middle, Last): Emilio Zamora |
| | Street Address: 2653 Barton Hills Drive |
| | City: Austin |
| | State: TX  Zip Code: 78704 |
| | Telephone Number: 5127390168 |
| | Home |
| | Work |

|  | Cell |
|  | E-mail: _e.zamora@austin.utexas.edu_ |

| **What is the name of the employer that you believe discriminated or retaliated against you?** | Company Name: _The University of Texas at Austin_<br>Street Address: _110 Inner Campus Drive_<br>City: _Austin_<br>State: _TX_  Zip Code: _78705_<br>Telephone Number: _5124713434_<br><br>**Give the date(s) and times you believe you were discriminated against:**<br><br>Oct 1 2017 until the present |

| **Why do you believe your employer discriminated or retaliated against you?** | Race<br><br>American Indian or Alaska Native<br><br>Indicate Tribal Affiliation:<br><br>Asian<br><br>Black or African American<br><br>Native Hawaiian or Other Pacific Islander<br><br>White | National Origin<br><br>Hispanic or Latino<br><br>Other<br><br>Color<br><br>Religion<br><br>Sex | Sexual Orientation<br><br>Gender Identity<br><br>Inquiring About Pay<br><br>Discussing Pay<br><br>Disclosing Pay | Protected Veteran Status<br><br>Disability<br><br>Retaliation |

## How did you learn that you could file a complaint with OFCCP?

**Internet**
**Poster**
**Community Organization**
**OFCCP Meeting/Event**
**Brochure**
**Other**

## Your Complaint:

**Please describe below what you think the employer did or didn't do that you believe caused discrimination or retaliation, including:**

1. What actions the employer took against you.
2. Why you believe those actions were based on your: race; color; religion; sex; sexual orientation; gender identity; national origin; disability; veteran status; and/or inquiries about, discussions, or disclosures of your pay or the pay of others; and/or in retaliation for filing a complaint, participating in discrimination proceedings, opposing unlawful discrimination, or exercising any other rights protected by OFCCP.
3. When the employer actions happened, where they happened, and who was involved.
4. What harm, if any, you or others suffered because of the alleged discrimination or retaliation.
5. What explanation, if any, your employer or people representing your employer offered for their actions.
6. Who was in the same or similar situation as you and how they were treated. Include information such as the race, color, religion, sex, sexual orientation, gender identity, national origin, disability, or protected status of these individuals, if known.
7. What information you have about federal contracts the company that you worked for had at the time of the discrimination or retaliation you describe in this complaint.

After multiple efforts I have to acknowledge that the online system presently is not working Please contact me by email to receive the full text of the complaint which I have tried to submit multiple times yet constantly getting the notification that there are special characters even after I have removed all symbols numbers punctuation marks and even spaces I do apologize for the inconvenience

| **Do you think the discrimination includes or affects others?** | Do you believe other employees or applicants were treated the same way as you described above?<br><br>Yes<br>No |
|---|---|
| **Do you have an attorney or other representative?** | If you are represented by an attorney, or another person, or an organization, please provide their contact information below.<br><br>Name (First, Middle, Last): _____<br>Street Address: _____<br>City: _____<br>State: _____ Zip Code: _____<br>Telephone Number: _____<br>E-mail: _____<br>Who should we contact if we need more information about your description of what occurred?<br><br>You<br>Your Representative |
| **Signature and Verification** | I declare under penalty of perjury that the information given above is true and correct to the best of my knowledge or belief. A willful false statement is punishable by law.<br><br>I hereby authorize the release of any medical information needed for this investigation.<br><br>Signature of Complainant: _Alberto A. Martinez_____ Date: _10/14/2020_____ |

Form CC-4 (Revised 5/2020)



# Complaint Involving Employment Discrimination by a Federal Contractor or Subcontractor

Please read the instructions before completing this form.

OMB: 1250-0002
Expires: 5/31/2023

## How can we reach you?

Name (First, Middle, Last): Fred Valdez, Jr.

Street Address: 2424 Legend Trail

City: Leander

State: Texas

Zip Code: 78641

Telephone Number: 5123375076

☑ Home

☐ Work

☐ Cell

E-mail: fredv@austin.utexas.edu

Have you filed these allegations of employment discrimination with another federal or local agency?

☐ Yes

☑ No

If yes, provide the agency and date filed:

Contact Name:

Phone Number:

## Who can we contact if we cannot reach you?

Name (First, Middle, Last): Martha Menchaca

Street Address: 6302 Needham Lane

City: Austin

State: Texas

Zip Code: 78739

Telephone Number: 5122881952

☑ Home

☐ Work

☐ Cell

E-mail: mmen@austin.utexas.edu

# What is the name of the employer that you believe discriminated or retaliated against you?

Company Name: University of Texas at Austin

Street Address: 110 Inner Campus Dive

City: Austin

State: Texas

Zip Code: 78705

Telephone Number: 5124713434

Give the date(s) and times you believe you were discriminated against:

October 1, 2017 to present

# Why do you believe your employer discriminated or retaliated against you?

☐ **Race**
☐ American Indian or Alaska Native

Indicate Tribal Affiliation:

☐ Asian
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
☐ White
☑ **National Origin**
☑ Hispanic or Latino

☐ Other
☐ **Color**
☐ **Religion**
☐ **Sex**
☐ **Sexual Orientation**
☐ **Gender Identity**
☐ **Inquiring About Pay**
☐ **Discussing Pay**
☐ **Disclosing Pay**
☐ **Protected Veteran Status**
☐ **Disability**
☐ **Retaliation**

# How did you learn that you could file a complaint with OFCCP?

☐ Internet
☐ Poster
☐ Community Organization
☐ OFCCP Meeting/Event
☐ Brochure
☑ Other

# Your Complaint:

**Please describe below what you think the employer did or didn't do that you believe caused discrimination or retaliation, including:**

1. What actions the employer took against you.
2. Why you believe those actions were based on your: race; color; religion; sex; sexual orientation; gender identity; national origin; disability; veteran status; and/or inquiries about, discussions, or disclosures of your pay or the pay of others; and/or in retaliation for filing a complaint, participating in discrimination proceedings, opposing unlawful discrimination, or exercising any other rights protected by OFCCP.
3. When the employer actions happened, where they happened, and who was involved.
4. What harm, if any, you or others suffered because of the alleged discrimination or retaliation.
5. What explanation, if any, your employer or people representing your employer offered for their actions.
6. Who was in the same or similar situation as you and how they were treated. Include information such as the race, color, religion, sex, sexual orientation, gender identity, national origin, disability, or protected status of these individuals, if known.
7. What information you have about federal contracts the company that you worked for had at the time of the discrimination or retaliation you describe in this complaint.



Notes                                                                    **PLEASE SEE BELOW.**

# Do you think the discrimination includes or affects others?

Do you believe other employees or applicants were treated the same way as you described above?

☑ Yes

☐ No

# Do you have an attorney or other representative?

If you are represented by an attorney, or another person, or an organization, please provide their contact information below.

Name (First, Middle, Last):

Street Address:

City:

State:

Zip Code:

Telephone Number:

E-mail:

Who should we contact if we need more information about your description of what occurred?

☑ You

☐ Your Representative

# Signature and Verification

I declare under penalty of perjury that the information given above is true and correct to the best of my knowledge or belief. A willful false statement is punishable by law.

I hereby authorize the release of any medical information needed for this investigation.

Signature of Complainant: Fred Valdez, Jr.

Date: 12/31/2020

Form CC-4 (Revised 5/2020)

**Fred Valdez, Jr.          OFCCP Complaint Items 1-7.          December 2020**

1. What actions the employer took against you

In Fall 2018, I joined a group of Hispanic history professors who had formed an Equity Committee that was examining salary disparities within their department. A similar problem existed in my department of anthropology, affecting Mexican origin professors, including me. Subsequently, we convened a meeting with other Hispanic Full Professors, and we realized that

they too were underpaid compared to their non Hispanic peers and had experienced similar forms of academic discrimination within their departments. By then the Independent Equity Committee had obtained data from Vice Provost Edmond Gordon that confirmed the salary disparities. In October of 2019, our committee completed a report that formally notified UT administrators about ongoing inequities that constitute bias and discrimination against Hispanic employees. For example, it shows that in FY 2016 to 2017, the 47 full time Hispanic full Professors at UT Austin were each paid a mean annual compensation of 25,342 dollars less than the 758 White full professors who were full time, a difference of minus 13 percent. This disparity is worse than the grave disparity between the compensation of male and female faculty identified in UTs 2008 Gender Equity Report, that On average across the University in 2007, female full professors earned 9,028 dollars less than men. That disparity of minus 7 percent was subsequently remedied by means of central administration raises for female faculty. Unfortunately, the gender report did not provide data on Hispanic Full Professor females. Furthermore, the University has failed to address our concerns after submitting our report, which is an issue addressed below in questions numbered 5 and 6. See Independent Equity Committee Report.

In my case, although my productivity is higher than other professors, my salary compensation is lower. In the anthropology department, it is my experience and position that faculty of Mexican descent are discriminated against on the basis of national origin. Our salaries are much lower than faculty who have similar or less publication and service records. Additionally, for years we have not been selected or even asked by the chairs to serve in leading administrative positions, a form of marginalization, which in turn can affect compensation. Chair of Committees such as the GSC, Graduate Admissions, Tenure and Promotion, Associate Chair, and Graduate Advisor are among the significant service options or opportunities never made available.

In the history of UT and the College of Liberal Arts, I was the first Hispanic archaeologist hired. For that matter, I am also the first Mexican American PhD in archaeology in the USA.

In 2017 to 2018, my salary was 101,248 dollars, yet I had more scholarly publications in print than many other faculty in Anthropology who had higher salaries. This disparity is alarming. My national and international reputation as a leading researcher and scholar in my field has been clear and evident, yet it remains undervalued. I have been invited to serve and present papers at several significant organized conferences in the USA, Latin America, Japan, and China. I have received a Fulbright Fellowship to Guatemala and have been part of several NSF and National Geographic funded research grants. I have organized and directed field research annually for more than 25 years which is far more than any other colleague.

My rate of publishing scholarly works is as high or higher than that of at least five full Professors who currently earn more than me, including Dr. Rosen, Dr. Covey, Dr. Shapiro, Dr. Strong, Dr. Kappelman, and Dr. Strum. This is not simply an issue of less compensation, but not even equal pay for similar or more work.

I have been the reviewer for 22 external tenure and full professor promotion reviews, and I currently serve as a member of four editorial boards of professional publications in my field. I have also received significant field and lab research funding both private and peer reviewed. In the training of my graduate students, I have one former student at the Chicago Field Museum,

one in a Supervisory position at National Geographic, 8 at universities as professors, and two in significant posts of private industry.

I helped to organize, with Dr. Menchaca of my department, the US Mexico Borderlands Program in Anthropology, which served to diversify graduate students in the department. I have mentored and chaired the dissertations of more than 20 graduate students including students of diverse backgrounds. Several courses I teach at UT are cross listed with the Lozano Long Institute of Latin American Studies and the Indigenous Studies Program. I have also remained one of the more active and productive professors in our department to provide student opportunities through Conference Courses and Internships.

2. Why you believe those actions were based on your race color, religion, sex, sexual orientation, gender identity, national origin, disability, veteran status, and or inquiries about, discussions, or disclosures of your pay or the pay of others, and or in retaliation for filing a complaint, participating in discrimination proceedings, opposing unlawful discrimination, or exercising any other rights protected by OFCCP.

I know that these allocations of disparate pay are based on ethnicity, being of Mexican Hispanic descent, and race, not being non Hispanic White employees or others, because these disparities are

A. Pay inequity issues are distinct to Hispanic full Professors, that is, Asian, White, Black employees are not affected by such a large and constant annual pay gap.

B. Consulting multiple Hispanic professors, we found that we did not get promotions to positions of leadership, unlike our non Hispanic colleagues.

C. We analyzed salaries and resumes of 90 faculty in the College of Liberal Arts, including 13 Hispanic full professors in four large departments, constituting 27 percent of all Hispanic full Professors at UT Austin, and we found that most of them are paid near the bottom of the pay scales, even though 54 percent are in the Top10 most published in their departments.

D. An analysis of covariance with one tailed hypothesis testing, adjusted for covariates of gender, years employed, and publications, showed that the mean compensation of Hispanic faculty was statistically significantly lower than the mean compensation of White faculty.

E. The salary disparity remains even when we statistically controlled for departments, confirming that it is not because one is comparing apples to oranges for example, White professors in engineering with Hispanic professors in Education.

F. We also found a near zero correlation between the compensation and quantity of publications of only Hispanic faculty, contrary to the strong correlations found for Asian, Black, and White faculty.

G. The Editorial Boards of prominent state newspapers, the Austin American Statesman, and the Houston Chronicle, have publicly called upon UT Austin to urgently fix this pay disparity, yet UT administrators have not acted.

H.  Most importantly, UT Austin provided IRRIS charts to Representative Gina Hinojosa, showing that in contrast to White full professors, Hispanic full professors have constantly had lower salaries for 9 consecutive years 2010 to 2018, an average of 12 percent lower per year.

K. In the Department of Anthropology I have experienced a history of discrimination because there is a gender and racial hierarchy, with Mexican American professors excluded in order that more funds and resources are available to white professors. This pattern can be seen in salary compensation that started when I was first hired.  In 1988, Joel Sherzer, the chair determined the salary, and that year a group of assistant professors were hired and I was not aware that our salaries differed. I was hired, as a Harvard PhD at 30,000 dollars, Martha Menchaca was hired at 29,500 dollars and is a Stanford PhD, Kathleen Stewart white female, as a U Michigan PhD was paid 30,000 dollars, John Kappleman white male, Harvard PhD was hired at 33,000 dollars.  The following year another white male assistant professor was hired, Sam Wilson, and he was also given the starting salary of 33,000 dollars, similar to the other white male. Wilson received his PhD from the U of Chicago. Note that Kappelman and I both received our PhDs from Harvard University in 1987, we both had a full year of teaching at the university level before coming to UT Austin, and I had more research and publication, yet I was paid 10 percent less.

To the latter point, I had requested of the then department chair for a 10 to 15 percent increase over the 30,000 dollar offer and I was told that ALL entering assistant professors were being paid the same and it would not be fair to the others to pay me more. Clearly this was an untruth. The Hispanic faculty were hired with the lower salaries despite having earned Ph.D. degrees from top universities in our fields, Harvard and Stanford.

L. Forms of discrimination temporarily lessened when several faculty of color were hired by the year 2001, however, by 2015 nine faculty of color had left. In 2017, a white faculty member also left, Charles Hale, who accepted a position at UCSB as Dean of the College of Liberal Arts. Hale wrote a farewell to the Anthropology faculty, noting dissatisfactions that he was disheartened with, such as the direction that our department had taken in recent years. He complained against the lack of diversity, the governance structure that undermined diversity and had led to a shift in graduate student admissions to be nearly all white. When faculty of color left, their positions were filled with white faculty, nearly all males.

The year Dr. Hale left, we discovered that the chair of the department Samuel Wilson, had transferred 200,000 dollars in university funds given to the Borderlands Program, to be used instead for other departmental sources. This information was brought to my attention accidentally during an admissions committee meeting and I informed Dr. Menchaca of this discrepancy. We complained and were able to regain 150,000 dollars of the funds for the program. The initial loss of those funds affected our ability within the Borderlands Program to move forward and complete part of our academic mission.

Furthermore, during the tenure of Dr. Samuel Wilson as chair of the department, I was not credited for my work in providing student and department service in the form of Conference Courses which are collected by the department from all faculty and the credits are then used to give faculty time off from teaching for research or writing. I learned through a colleague, that Wilson confided in, that I accounted for about 90 percent of Conference Courses in the department over several years, yet I never got this directly nor compensated for those efforts, even though I requested such compensation.

M. Retaliation and intimidation, It is my assessment that over the years, my ongoing support for diversity and equal employment practices have affected the subjective manner merit is awarded in my department. The main method has been lower salary compensation, and other forms of retaliation and intimidation to prevent professors of Mexican descent from having a role in the administration of the department.

Several examples of subtle retaliation or intimidation have been felt from action by former chairs. As examples are actions by a former chair, James Brow, who took from my field research program the support of a Teaching Assistant. He claimed that the college took back the funding for that position, which was not true, he took the position to use internally. In another case, by the subsequent chair, Sam Wilson, was that I had secured funding for research equipment from the Deans Office and all I need was the formal request through my department chair. Wilson refused claiming that I was misinformed, although it turned out I was able to obtain the funds through alternate means. I was also kept from going up for promotion to Full Professor by the then chair with varying excuses that caused me to lose income while waiting to be allowed to go up for promotion. All of these actions by former Department Chairs impacted me personally, professionally, and clearly in compensation.

3. When the employer actions happened, where they happened, and who was involved.

The salaries of professors like myself are set by Department Chairs and Deans. Each October 1st, the new salaries become effective, in payroll. Yet the University has no structure in place to ensure that employees of a higher rank. For example, Professors are paid more than employees of a lower rank such as Associate Professors, or Assistant Professors, therefore, when Chairs and Deans allocate raises and new employee salaries, they manifest carelessness, bias, or favoritism, by granting higher salaries to some employees. Throughout the years, the sum of such acts creates a cumulative effect of discrimination against Hispanic employees, above all, as evidenced in our lower pay, in nearly all departments of the university, and contrary to our productivity and rank. In addition, in the anthropology department there are rules for merit raises, but these rules are not enforced.

4. What harm, if any, you or others suffered because of the alleged discrimination or retaliation.

Other Hispanic Full Professors and I have suffered the damage of annual disparate pay, in the amount of 12 percent less than our non Hispanic White coworkers, plus loss of interests on such lost earnings. Additionally, social capital, respect, inclusion, and promotions to positions of

leadership are granted more often to faculty with higher salaries, while those of us who are Hispanic and underpaid are granted fewer promotions to positions of leadership, awards, opportunities, etc. We quantified this in terms of our lack of endowment awards, teaching awards, and administrative roles.

5. What explanation, if any, your employer or people representing your employer offered for their actions.

In writings and in person, the past President Gregory Fenves and the Provost McInnis both acknowledged in Oct.18, Oct.30, Nov.11, 2019, Feb.18, Feb.21, 2020 that inequities in salaries do exist and that they affect Hispanic faculty. They spoke of it as something unfortunate and regrettable, but did not offer a clear explanation. Provost McInnis did say that the university is very decentralized so that problems do arise and accumulate. And, she said that the university lacked centralized data systems to track such disparities. However, McInnis and Fenves both resigned in mid 2020.

We wrote a formal letter to the new President and Provost on August 3, but received no reply.

For the Department of Anthropology, regarding salary, the most common excuse for a lack in increased compensation is insufficient salary funds given to the department for merit. This may be true, but Mexican Americans remain at the bottom for consideration at every turn, but seems especially true when resources are low.

6. Who was in the same or similar situation as you and how they were treated. Include information such as the race, color, religion, sex, sexual orientation, gender identity, national origin, disability, or protected status of these individuals, if known.

In 2008, our university recognized a grave disparity between the compensation of male and female faculty, which it identified in UTs 2008 Gender Equity Report, that On average across the University in 2007, female full professors earned 9,028 dollars less than men. UT administrators rightly recognized that that pay gap was unacceptable, and set to fix it. That disparity of minus 7 percent was subsequently remedied by means of central administration raises for female faculty.

Presently, the pay gap for Hispanic full Professors is far larger, namely minus 12 percent per year. We estimate that, 47 affected Hispanic full Professors, both men and women, as of 2017, plus multiple others in lower ranks, maybe around 10 or 20 Associate Professors. In the former group the differences are statistically very large minus 12 percent. In the latter group, the differences affect more clearly certain individuals, not necessarily most of them. However, if one does not control for departments as was not done in the OFCCP intervention with Princeton University, then clearly Hispanic professors in all ranks are affected. Our Hispanic Equity Report found annual pay gap differences compared to non Hispanic White employees of minus 25,342 dollars for Hispanic full Professors, minus 10,647 dollars for Hispanic Associate Professors, and minus 18,930 dollars for Hispanic Assistant Professors, at UT Austin.

7. What information you have about federal contracts the company that you worked for had at the time of the discrimination or retaliation you describe in this complaint.

There are many federal contracts including with the Department of Defense, but I'm certain there are contracts with other federal agencies as well. These in addition to the National Science Foundation, National Endowment for the Humanities, and National Institute of Health.

**From:** OFCCP Complaints OFCCPComplaints@DOL.GOV
**Subject:** OFCCP Complaint Form
**Date:** January 7, 2021 at 7:46 PM
**To:** OFCCP-SW-CC4 - ESA OFCCP-SW-CC4@dol.gov



### Complaint Involving Employment Discrimination
### Federal Contractor or Subcontra

Please read the instructions before completing thi

OMB: 1250-0002
Expires: 5/31/2023

Reset Form    Print Form

| How can we reach you? | Name (First, Middle, Last): Emilio Zamora<br>Street Address: 2653 Barton Hills Drive<br>City: Austin<br>State: TX  Zip Code: 78704<br>Telephone Number: (512) 739-0168<br>☐ Home ☐ Work ☑ Cell<br><br>E-mail: E.Zamora@austin.utexas.edu<br>Have you filed these allegations of employment discrimination with another federal or local agency?<br><br>☐ Yes ☑ No<br><br>If yes, provide the agency and date filed: _____<br>Contact Name: _____ Phone Number: _____ |
|---|---|
| Who can we contact if we cannot reach you? | Name (First, Middle, Last): Angela Valenzuela<br>Street Address: 2653 Barton Hills Drive<br>City: Austin<br>State: TX  Zip Code: 78704<br>Telephone Number: (512) 739-0078<br>☐ Home ☐ Work ☑ Cell<br><br>E-mail: Valenz@Austin.utexas.edu |
| What is the name of the employer that you believe discriminated or retaliated against you? | Company Name: University of Texas at Austin<br>Street Address: 110 Inner Circle Drive<br>City: Austin<br>State: TX  Zip Code: 78712<br>Telephone Number: (512) 471-3434<br>**Give the date(s) and times you believe you were discriminated against:**<br>October 1, 2020- |

| Why do you believe your employer discriminated or retaliated against you? | ☑ Race<br>☐ American Indian or Alaska Native<br> Indicate Tribal Affiliation:<br>☑ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☑ White | ☑ National Origin<br>☑ Hispanic or Latino<br>☐ Other<br>☐ Color<br>☐ Religion<br>☐ Sex | ☐ Sexual Orientation<br>☐ Gender Identity<br>☐ Inquiring About Pay<br>☐ Discussing Pay<br>☐ Disclosing Pay | ☐ Protectec Veteran Status<br>☐ Disability<br>☐ Retaliatio |
|---|---|---|---|---|

**How did you learn that you could file a complaint with OFCCP?**

☑ Internet ☐ Poster ☐ Community Organization ☐ OFCCP Meeting/Event ☐ Brochure ☐ Other

**Your Complaint:**

**Please describe below what you think the employer did or didn't do that you believe caused discrimination or retaliation, including:**

1. What actions the employer took against you.
2. Why you believe those actions were based on your: race; color; religion; sex; sexual orientation; gender identity; national origin;
   disability; veteran status; and/or inquiries about, discussions, or disclosures of your pay or the pay of others; and/or in retaliation fo
   filing a complaint, participating in discrimination proceedings, opposing unlawful discrimination, or exercising any other rights protec
   by OFCCP.
3. When the employer actions happened, where they happened, and who was involved.
4. What harm, if any, you or others suffered because of the alleged discrimination or retaliation.
5. What explanation, if any, your employer or people representing your employer offered for their actions.
6. Who was in the same or similar situation as you and how they were treated. Include information such as the race, color, religion, se
   sexual orientation, gender identity, national origin, disability, or protected status of these individuals, if known.
7. What information you have about federal contracts the company that you worked for had at the time of the discrimination or retalia
   you describe in this complaint.


I am sending my responses to these questions by email. I have been unable to enter them without any of the symbols indicated. Pleas
me know if you received my email. Emilio

| | |
|---|---|
| **Do you think the discrimination includes or affects others?** | Do you believe other employees or applicants were treated the same way as you described above?<br><br>☑ Yes ☐ No |
| **Do you have an attorney or other representative?** | If you are represented by an attorney, or another person, or an organization, please provide their contact informat below.<br><br>Name (First, Middle, Last): _____<br>Street Address: _____<br>City: _____<br>State: ____ Zip Code: _____<br>Telephone Number: _____<br>E-mail: _____<br>Who should we contact if we need more information about your description of what occurred?<br><br>☑ You ☐ Your Representative |
| **Signature and Verification** | I declare under penalty of perjury that the information given above is true and correct to the best of my knowledg belief. A willful false statement is punishable by law.<br><br>I hereby authorize the release of any medical information needed for this investigation.<br><br>Signature of Complainant: _Emilio Zamora_____ Date: _1/7/2021_____ |

Form CC-4 (Revised 5

From: **Zamora, Emilio** e.zamora@austin.utexas.edu
Subject: Addendum
Date: January 7, 2021 at 7:49 PM
To: OFCCP-SW-CC4 - ESA OFCCP-SW-CC4@dol.gov



> CAUTION - The sender of this message is external to the DOL network. Please use care when clicking on links and responding with sensitive information. Send suspicious email to spam@dol.gov.

I submitted a discrimination complaint under my name, Emilio Zamora. I could not enter the following responses with successfully getting past the "symbols" that I was to delete. I deleted as many as I noticed but apparently didn't do a complete job. Please let me know if you received this, by email or phone, 521 739-0168. Thank you. Emilio

1. What actions the employer took against you.

The university has not corrected pay inequities affecting Hispanic faculty like myself despite requests to assess and resolve the problem. I have made this request individually and as a member of the Hispanic Equity Committee, a group of Hispanic full professors who have been petitioning for equity regarding Latino faculty at the University of Texas at Austin.

Between 2017 and 2018, two Hispanic colleagues in the History Department and I had informal conversations on a shared sense that the University was paying us at a lower rate than fellow White faculty with equal lengths of service and comparable records of scholarship and service. We went before the general faculty to propose an Equity Committee to conduct preliminary analysis of the available data. The Department faculty established the committee on May 2, 2018. The Committee presented its early findings within a year but we did not receive an appropriate and satisfying response. In the meantime, we joined with other Hispanic faculty in my same job category and rank of full Professor, and we realized that they too were underpaid relative to their non-Hispanic peers. In summer 2018, we approached an administrator, Vice Provost Dr. Ted Gordon to inquire about what seemed a universitywide pay inequity involving Latinos. He provided charts that confirmed our suspicions. We subsequently met with the Provost's Council for Racial and Ethnic Equity and Diversity, CREED, on Sept.18, 2018, to present the perceived problems affecting Hispanics, especially disparities in compensation. CREED convened seven subcommittees to work on a Hispanic Faculty Initiative. The Committee delivered its report to the Provost in May 2019; however, we it did not analyze the issue of compensation. Our group, which had grown to eight Hispanic full Professors in the College of Education, formed the Independent Equity Committee and prepared the Hispanic Equity Report, completed on October 8, 2019. Our Committee submitted the report to UT administrators about ongoing inequities that "constitute bias and discrimination against Hispanic employees." For example, it shows that in 2016-17, each of 47 fulltime Hispanic full Professors at UT Austin were each paid a mean annual compensation of 25,342 less than the 758 White full professors who were full-time, a difference of minus 13 percent. This difference is worse than the grave disparity between the compensation of male and female faculty identified in the university's 2008 Gender Equity Report, that: "On average across the University in 2007, female full professors earned 9,028 less than men." That disparity of minus 7 percent was subsequently remedied by means of central administration raises for female faculty.

By this time—around the latter part of 2019—I came to believe that my case was one of the most egregious.

2. Why you believe those actions were based on your: race; color; religion; sex; sexual orientation; gender identity; national origin; disability; veteran status; and/or inquiries about, discussions, or disclosures of your pay or the pay of others; and/or in retaliation for filing a complaint, participating in discrimination proceedings, opposing unlawful

discrimination, or exercising any other rights protected by OFCCP.

For years, my employer has hired new faculty at salaries exceeding mine and has assigned administrative positions to White, Black, and Asian colleagues, but not to me. In 2017-18, among 63 faculty in the History department, I was the number 12 faculty member with most scholarly publications, yet 22 faculty earned more than me despite each having fewer publications and awards, including 7 employees of lower rank. In 2018-19, the average 9-month salary of White full Professors in my department, not counting administrators, was 153,257. Yet my salary was only 111,120. Contrary to my equal or higher rank, more years of service, and higher productivity, I have been paid far less than many employees in my department. I therefore seek equal pay, back pay, and interest on back pay, and all other relief available by law. Also, I demand that my employer establish structures of equal pay, based on years, rank, and productivity and make available to the public full compensation data for all UT faculty that includes all forms of payment, including base salaries and stipends, beginning in 2000. This last point is important because the university does not make available the full compensation data, most probably because it reveals more serious pay inequities since these data includes stipends and other forms of pay that are attached to administrative assignments that are not usually available to Latino and Latina faculty.

I know that these allocations of disparate pay are based on ethnicity , or,being Hispanic, and race, or not being non-Hispanic White employees or others, and possibly age since I am one of the most senior members of a department with about 55 faculty. The following are my reasons

Distinct to Hispanic full Professors, that is, Asian, White, Black employees are not affected by such a large, constant annual pay gap

Consulting multiple Hispanic professors we found that we did not get promotions to positions of leadership, unlike our non-Hispanic colleagues

We analyzed salaries and resumes of 90 faculty in the College of Liberal Arts, including 13 Hispanic full professors in four large departments, constituting 27 percent of all Hispanic full Professors at UT Austin, and we found that most of them are paid near the bottom of the pay scales, even though 54 percent are in the Top 10 most published in their departments

An analysis of covariance with one-tailed hypothesis testing, adjusted for covariates of gender, years employed, and publications, showed that the mean compensation of Hispanic faculty was statistically significantly lower than the mean compensation of White faculty

The salary disparity remains even when we statistically controlled for departments, confirming that it is not because one is comparing apples to oranges. For example, White professors in engineering with Hispanic professors in Education.

Also, we found a near zero correlation between the compensation and quantity of publications of only Hispanic faculty, contrary to the strong correlations found for Asian, Black, and White faculty; and the Editorial Boards of prominent state newspapers, the Austin American-Statesman, and the Houston Chronicle, have publicly called upon UT Austin to urgently fix this pay disparity. Yet UT administrators have not;

Most importantly, UT Austin provided IRRIS charts to State Representative Gina Hinojosa, showing that in contrast to White full professors, Hispanic full professors have constantly had lower salaries for 9 consecutive years between 2010 and 2018, an average of 12 percent lower per year.

3. When the employer actions happened, where they happened, and who was involved. The salaries of professors like myself are set by Department Chairs and Deans. Each October 1, the new salaries become effective, in payroll. Yet the University has no

structure in place to ensure that employees of a higher rank, for example, Professor, are paid more than employees of a lower rank, for example, Associate Professor, or Assistant Professor, therefore, when Chairs and Deans allocate raises and new employee salaries, they manifest carelessness, bias, or favoritism, by granting higher salaries to some employees. Throughout the years, the sum of such acts creates a cumulative effect of discrimination against Hispanic employees, above all, as evidenced in our lower pay, in nearly all departments of the university, and contrary to our productivity and rank.

4. What harm, if any, you or others suffered because of the alleged discrimination or retaliation.

During the last nine or ten years, Hispanic full Professors at the university have suffered the damage of annual disparate pay, in the amount of 12 percent less than our non-Hispanic White coworkers, plus loss of interests on such lost earnings. Also, social capital, respect, inclusion, and promotions to positions of leadership are granted more often to faculty with higher salaries, while those of us who are Hispanic and underpaid are granted fewer promotions to positions or leadership, awards, opportunities, etc. We quantified this in terms of our lack of endowment awards, teaching awards, and administrative roles.

5. What explanation, if any, your employer or people representing your employer offered for their actions.

In writings and in person, the past President Gregory Fenves and the Provost Maurie McInnis acknowledged on Oct.18, Oct.30, Nov.11, 2019, Feb.18, and Feb.21, 2020 that inequities in salaries exist and that they affect Hispanic faculty. They spoke of it as something unfortunate and regrettable, but did not offer a clear explanation. McInnis did say that the university is "very decentralized" so that problems do arise and accumulate. And, she said that the university lacked centralized data systems to track such disparities.However, McInnis and Fenves both resigned in mid-2020.We wrote a formal letter to the new President and Provost on August 3, but received no reply.

6. Who was in the same or similar situation as you and how they were treated. Include information such as the race, color, religion, sex, sexual orientation, gender identity, national origin, disability, or protected status of these individuals, if known.

In 2008, our university recognized a grave disparity between the compensation of male and female faculty, which it identified in the university's 2008 Gender Equity Report, that: "On average across the University in 2007, female full professors earned 9,028 less than men." UT administrators rightly recognized that the pay gap was unacceptable, and set out to fix it. That disparity of minus 7 percent was subsequently remedied by means of central administration raises for female faculty. Presently, the pay gap for Hispanic full Professors is far larger, namely minus12 percent per year. We estimate that, 47 affected Hispanic full Professors, both men and women, as of 2017, plus multiple others in lower ranks, around 10 or 20 Associate Professors. In the former group the differences are statistically very large minus12 percent. In the latter group, the differences affect more clearly certain individuals, not necessarily most of them. However, if one does not "control for departments" as was not done in the OFCCP intervention with Princeton University, then clearly Hispanic professors in all ranks are affected. Our Hispanic Equity Report found annual pay gap differences, compared to non-Hispanic White employees, of -25,342 for Hispanic full Professors,-10,647 for Hispanic Associate Professors, and -18,930 for Hispanic Assistant Professors, at UT Austin.

7. What information you have about federal contracts the company that you worked for had at the time of the discrimination or retaliation you describe in this complaint.

Consult the following on the Internet: US Federal contracts awarded to The University of Texas At Austin in United States of America. Search 727 federal contracts awarded to

The University of Texas At Austin in United States of America since fiscal year 2015.

# Ex. B

**U.S. Department of Labor**     Office of Federal Contract Compliance Programs
Southwest and Rocky Mountain Regional Office
525 South Griffin Street, Room 840
Dallas, TX 75202
Tel: (972) 850-2550



September 29, 2023

<u>**Via Electronic Mail:**</u> <u>almartinez1905@gmail.com</u>
<u>**Read and Delivery Receipt Requested**</u>

U.S. DEPARTMENT OF LABOR
OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS

OFCCP Complaint No. I00300474

Alberto A. Martinez                                          COMPLAINANT
409 E 38th St., Apt 203
Austin, TX 78705

The University of Texas at Austin                            CONTRACTOR
10 Inner Campus Drive
Austin, TX 78705

### NOTIFICATION OF RESULTS OF INVESTIGATION

On October 26-28, 2021, the U.S. Department of Labor, Office of Federal Contract Compliance Programs (OFCCP) conducted an investigation of the allegation of discrimination based on ethnicity (Hispanic or Latino), color, and national origin made in the complaint of Alberto A. Martinez filed on October 14, 2020, and pursuant to procedures for complaints of employment discrimination filed against employers holding government contracts or subcontracts. The results of the investigation are as follows:

1.  The University of Texas at Austin (contractor) is a nonexempt government contractor subject to the requirements of Executive Order 11246 (EO 11246), as amended; Section 503 of the Rehabilitation Act of 1973 (Section 503), as amended; the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended (VEVRAA); and an employer of 15 or more persons subject to Title VII of the Civil Rights Act of 1964 (Title VII) and Title I of the Americans with Disabilities Act of 1990, as amended (ADA).

2.  Alberto A. Martinez (complainant) is a Hispanic male protected by EO 11246 and Title VII. The complaint was properly filed under the provisions of EO 11246.

3.  The complainant alleges the contractor violated its obligations under the non-discrimination provisions of EO 11246 and Title VII, specifically claiming compensation and promotion discrimination based on ethnicity, color, and national origin. Relying upon the Hispanic Equity Report prepared and released by the Independent Equity Committee, the complainant alleges that Hispanic professors with superior achievements and longer tenures are paid significantly less than their non-Hispanic counterparts, a problem that is aggravated by the contractor's practice of hiring new professors at a lower rank but earning almost the same or more than higher-ranked tenured professors. Per the complainant, the university has no structure in place to avoid such acts, thus creating a cumulative effect of pay discrimination against Hispanic faculty in nearly all

departments of the university, and contrary to productivity and rank.

The complainant also alleges that promotions to positions of leadership and/or committees are granted more often to faculty with higher salaries, while those who are Hispanic and underpaid are granted fewer promotions to positions of leadership, awards, and opportunities. These denials of promotions to positions of leadership are quantified in terms of lack of endowment awards, teaching awards, and administrative roles for Hispanic faculty, thus having a direct negative effect in the complainant's total compensation.

4.  The contractor denies the allegations that the complainant is underpaid and/or excluded from promotions to positions of leadership because of his ethnicity or national origin. The contractor contends that the complainant has a documented history of pay adjustments and appointments to positions of leadership. Per the contractor, the complainant's current annual salary already reflects one salary raise given proactively to faculty most likely to receive offers from other educational institutions. Such raise makes the complainant ineligible to qualifying for any subsequent equity increases intended to counteract pay disparities caused by salary compression. The contractor also noted that the complainant currently serves on several selective and prestigious committees, including those convened to consider issues of faculty salary and equity.

In addition, the contractor argues that bringing a pattern of practice claim using the Hispanic Equity Report is inappropriate as it relies on old and incomplete salary data, is misleading, and contains methodological flaws, thus making it valueless from an evidentiary standpoint. Specifically, the contractor states that when a more comprehensive methodology is employed, it reveals that there is no correlation between a faculty member's salary and the complainant's Hispanic ethnicity and/or national origin. Lastly, the contractor contends that using updated salary data accounting for the raises given to faculty (including the complainant), a more standard model specification, or a larger sample eliminates any evidence of a statistically significant relationship between race/national origin and salary.

5.  Our investigation indicates that the contractor did not discriminate against the complainant based on his race and/or national origin.

    a.  Compensation: The compensation discrimination allegations were presented to the contractor's administration several times, the last one through the Hispanic Equity Report. OFCCP conducted an independent regression analysis considering the salary data used by the Hispanic Equity Report and decided the analysis presents conclusions that are invalid due to a faulty methodology. Further, OFCCP concluded that if proper statistical standards had been utilized it would have shown no statistically significant disparity existed against Hispanic Professors in 2017 in the four academic departments included in the Hispanic Equity Report.

    OFCCP also conducted an independent regression analysis considering the salary data the contractor used for its own 2017 & 2019 pay data statistical analyses in reply to the Hispanic Equity Report and again found no disparity against Hispanic faculty at any rank.

    b.  Promotion opportunities: Regarding the promotion discrimination allegations, OFCCP did not find evidence to confirm the complainant's allegations that promotions to positions of leadership and/or committees are granted more often to faculty with higher salaries, while those who are Hispanic and underpaid faculty are granted fewer promotions to positions of leadership, awards, and/or opportunities. OFCCP's analysis of records and interviews with the contractor's officials involved in this process revealed that Hispanic faculty have long

histories of appointments to positions of leadership. OFCCP did not find evidence of professors being underpaid are failing to be promoted due to their race/ethnicity.

Finally, as it relates to the complainant specifically, OFCCP confirmed that the complainant received pay increases commiserate with his positions and has been appointed to serve in several prestigious committees, including those convened to consider issues of faculty salary and equity.

OFCCP's investigation found insufficient evidence that the contractor violated its obligations under the nondiscrimination and affirmative action provisions of EO 11246, or under the nondiscrimination provisions of Title VII. This determination concludes the processing of this complaint by OFCCP.

If you, the complainant, wish to pursue your complaint further under Title VII, you should follow the instructions in the enclosed "Notice of Right-to-Sue" as set forth in the regulations at 29 CFR § 1601.28(e).

The Regional Director of the Office of Federal Contract Compliance Programs may, for reasonable cause, reconsider or order the reconsideration of this determination. A request for reconsideration based on reasonable cause should be addressed, within thirty (30) days of receipt of this notification to:

Regional Director, OFCCP<br>
U.S. Department of Labor<br>
525 S. Griffin St., Room 840<br>
Dallas, TX 75202

Such a request should be accompanied by affidavits, signed testimony of supervisory or co-workers, and other written documentation which would substantially alter OFCCP's findings in this case.

On behalf of the United States Department of Labor,

LAQUANDRA ADEBAJO                                    9/29/2023
Director of Regional Operations                          Date
Southwest & Rocky Mountain Region

Enclosures:     Notice of Right-to-Sue
                Information related to filing suit under Title VII and Title I of the ADA

cc:     Galen Eagle Bull - Deputy Director for Investigation & Adjudication
        galen.eaglebull@austin.utexas.edu

        Adam Arthur Biggs - Assistant Vice President for Legal Affairs
        adam.biggs@austin.utexas.edu

        Norma Guzman – Director, Equal Employment Opportunity Commission
        norma.guzman@eeoc.gov

## U.S. DEPARTMENT OF LABOR
## OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS

TO:  Alberto A. Martinez                    FROM: Office of Federal Contract
     409 E 38th St., Apt 203                    Compliance Programs
     Austin, TX 78705                    525 South Griffin Street, Room 840
                                           Dallas, TX 75202

OFCCP Representative: Jane Suhr, Acting Regional Director

Complaint Number: I00300474

**TO THE COMPLAINANT**: You may file a lawsuit against the contractor under Title VII of the Civil Rights Act of 1964 in federal or state court. **Your lawsuit must be filed within 90 calendar days of receipt of this notice, or your right to sue will be lost.** Please see the enclosed information sheet on filing lawsuits for further information.

With the issuance of this Notice of Right-to-Sue, OFCCP is terminating its processing of your complaint.

An information copy of this Notice has been sent to the below employer as named in your complaint.

The University of Texas at Austin
10 Inner Campus Drive
Austin, TX 78705

On behalf of the United States Department of Labor,

LAQUANDRA ADEBAJO                    9/29/2023____
Director of Regional Operations                    Date
U.S. Department of Labor, OFCCP
525 South Griffin, Room 840
Dallas, Texas 75202

## INFORMATION  RELATED  TO FILING  SUIT
## UNDER  TITLE  VII AND TITLE  I OF THE ADA

This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.

**PRIVATE  SUIT RIGHTS -Title VII of the Civil Rights Act of 1964, as amended (Title VII) or the Americans with Disabilities  Act of 1990, as amended  (ADA)**

In order to pursue this matter further, you must file a lawsuit against the contractor(s) named in the complaint **within 90 days of receipt of Notice of Right-to-Sue.** Once this 90-day period expires, your right to sue based on the complaint covered by this Notification will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notification.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notification is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the complaint or, to the extent permitted by court decisions, matters like or related to the matters alleged in the complaint.  Generally, suits are brought in the State where the alleged  unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the contractor has its main office. If you have simple questions, you usually can get answers from the Clerk of the court where you are bringing suit, but do not expect them to write your complaint or make legal strategy decisions for you.

**PRIVATE  SUE RIGHTS - Equal Pay Act (EPA)**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment; back pay due for violations that occurred more than **2 years (3 years for willful violations)  before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/03 to 12/1/03, you should file suit before 7/1/05- not 12/1/05 -in order to recover unpaid wages due for July 2003. This EPA time limit is separate from the 90-day filing period under Title VII or the ADA referred to above. Therefore, if you also plan to sue under Title VII or the ADA, in addition to suing on the EPA claim, suit should be filed within the Title VIII ADA 90-day period **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY  REPRESENTATION -Title VII and the ADA**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction  in your case may, in limited circumstances, help you to obtain a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).

Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND ASSISTANCE  - All Statutes

If you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which the U.S. District Court can hear your case, you may contact an Office of Federal Contract Compliance Programs (OFCCP) representative at (972) 850 - 2650, who will coordinate with the Equal Employment Opportunity Commission (EEOC) to promptly obtain that information for you. If you need to inspect or obtain a copy of information in OFCCP's file, please request it promptly in writing and provide the OFCCP complaint number. If you file suit and want to review the complaint file, **please make your review request within 6 months of this Notice.** (Before filing suit, any request should be made within 90 days of the date of the Notification of Results of Investigation.) If you file suit, please send a copy of your Court complaint to:

Norma Guzman - Director
Equal Employment Opportunity Commission
Legacy Oaks Building A
5410 Fredericksburg Road
Suite 200
San Antonio, TX 78229
Phone: (210) 281-7530 / Fax: (210) 281-2522 / Email: sanantonio.intake@eeoc.gov

**U.S. Department of Labor**     Office of Federal Contract Compliance Programs
Southwest and Rocky Mountain Regional Office
525 South Griffin Street, Room 840
Dallas, TX 75202
Tel: (972) 850-2550



September 29, 2023

**Via Electronic Mail: emiliosoliszamora@gmail.com**
**Read and Delivery Receipt Requested**

U.S. DEPARTMENT OF LABOR
OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS

OFCCP Complaint No. I00300812

Emilio Zamora                                                    COMPLAINANT
2653 Barton Hills Drive
Austin, TX 78704

The University of Texas at Austin                               CONTRACTOR
10 Inner Campus Drive
Austin, TX 78705

## NOTIFICATION OF RESULTS OF INVESTIGATION

On October 26-28, 2021, the U.S. Department of Labor, Office of Federal Contract Compliance Programs (OFCCP) conducted an investigation of the allegation of discrimination based on race, ethnicity (Hispanic or Latino), and national origin made in the complaint of Emilio Zamora filed on January 7, 2021, and pursuant to procedures for complaints of employment discrimination filed against employers holding government contracts or subcontracts. The investigation has resulted in the following findings:

1. The University of Texas at Austin (contractor) is a nonexempt government contractor subject to the requirements of Executive Order 11246 (EO 11246), as amended; Section 503 of the Rehabilitation Act of 1973 (Section 503), as amended; the Vietnam Era Veterans' Readjustment Assistance Act of 1974, as amended (VEVRAA); and an employer of 15 or more persons subject to Title VII of the Civil Rights Act of 1964 (Title VII) and Title I of the Americans with Disabilities Act of 1990, as amended (ADA).

2. Emilio Zamora (complainant) is a Hispanic male protected by EO 11246 and Title VII. The complaint was properly filed under the provisions of EO 11246.

3. The complainant alleges the contractor violated its obligations under the non-discrimination provisions of EO 11246 and Title VII, specifically claiming compensation and promotion discrimination based on ethnicity and national origin. Relying upon the Hispanic Equity Report prepared and released by the Independent Equity Committee, the complainant alleges that Hispanic professors with superior achievements and longer tenures are paid significantly less than their non-Hispanic counterparts, a problem that is aggravated by the contractor's carelessness, bias, favoritism, and lack of structure to ensure that higher-ranked faculty are paid more than lower-ranked faculty. The complainant also alleges that Hispanic professors do not get promotions to positions of

leadership, thus having a direct negative effect on the total compensation of Hispanic faculty.

4. The contractor denies the allegations that the complainant is underpaid and/or excluded from promotions to positions of leadership because of his race, ethnicity, or national origin. The contractor contends that the complainant has a documented record of pay adjustments and a robust history of appointments to positions of leadership. Further, the contractor denies the above compensation allegations by explaining that just like many other Hispanic professors, the complainant received substantial salary increases in addition to other types of support to supplement his salary, including but not limited to course releases for two years (full-time salary for teaching only half-time), an endowment to support research and travel, and a sponsorship paid in his honor.

The contractor also noted that the complainant has been on his department's two main governing bodies in recent years, the Executive Committee and the Graduate Program Committee; he has twice co-chaired search committees for Borderlands; was named the U.S. Area Chair, a position that gave him responsibility for curricular and scheduling matters; and has been appointed to 13 other positions of leadership during his tenure. The complainant has not expressed any recent interest in serving in a leadership role such as department chair, associate chair, or graduate advisor.

In addition, the contractor argues that bringing a pattern of practice claim using the Hispanic Equity Report is inappropriate as it relies on old and incomplete salary data, is misleading, and contains methodological flaws, thus making it valueless from an evidentiary standpoint. Specifically, the contractor states that when a more comprehensive methodology is employed, it reveals that there is no correlation between a faculty member's salary and the complainant's Hispanic ethnicity and/or national origin. Lastly, the contractor contends that using updated salary data accounting for the raises given to faculty (including the complainant), a more standard model specification, or a larger sample eliminates any evidence of a statistically significant relationship between race/national origin and salary.

5. Our investigation indicates that the contractor did not retaliate, intimidate, or discriminate against the complainant based on his race and/or national origin.

a. <u>Compensation</u>: The compensation discrimination allegations were presented to the contractor's administration several times, the last one through the Hispanic Equity Report. OFCCP conducted an independent regression analysis considering the salary data used by the Hispanic Equity Report and decided the analysis presents conclusions that are invalid due to a faulty methodology. Further, OFCCP concluded that if proper statistical standards had been utilized it would have shown no statistically significant disparity existed against Hispanic Professors in 2017 in the four academic departments included in the Hispanic Equity Report.

OFCCP also conducted an independent regression analysis considering the salary data the contractor used for its own 2017 & 2019 pay data statistical analyses in reply to the Hispanic Equity Report and again found no disparity against Hispanic faculty at any rank.

b. <u>Promotion opportunities</u>: Regarding the promotion discrimination allegations, OFCCP did not find evidence to confirm the complainant's allegations that Hispanic professors do not get promotions to positions of leadership. OFCCP's analysis of records and interviews with the contractor's officials involved in this process revealed that Hispanic faculty have long histories of appointments to positions of leadership. OFCCP did not find evidence of professors being underpaid are failing to be promoted due to their race/ethnicity.

Finally, as it relates to the complainant specifically, OFCCP found that the complainant received pay increases commiserate with his appointed positions.

OFCCP's investigation found insufficient evidence that the contractor violated its obligations under the nondiscrimination and affirmative action provisions of EO 11246, or under the nondiscrimination provisions of Title VII. This determination concludes the processing of this complaint by OFCCP.

If you, the complainant, wish to pursue your complaint further under Title VII, you should follow the instructions in the enclosed "Notice of Right-to-Sue" as set forth in the regulations at 29 CFR § 1601.28(e).

The Regional Director of the Office of Federal Contract Compliance Programs may, for reasonable cause, reconsider or order the reconsideration of this determination. A request for reconsideration based on reasonable cause should be addressed, within thirty (30) days of receipt of this notification to:

Regional Director, OFCCP
U.S. Department of Labor
525 S. Griffin St., Room 840
Dallas, TX 75202

Such a request should be accompanied by affidavits, signed testimony of supervisory or co-workers, and other written documentation which would substantially alter OFCCP's findings in this case.

On behalf of the United States Department of Labor,

LAQUANDRA ADEBAJO                                              9/29/2023
Director of Regional Operations                                    Date
Southwest & Rocky Mountain Region

Enclosures:    Notice of Right-to-Sue
               Information related to filing suit under Title VII and Title I of the ADA


cc:    Galen Eagle Bull - Deputy Director for Investigation & Adjudication
       galen.eaglebull@austin.utexas.edu

       Adam Arthur Biggs - Assistant Vice President for Legal Affairs
       adam.biggs@austin.utexas.edu

       Norma Guzman - Director
       Equal Employment Opportunity Commission
       Norma.guzman@eeoc.gov

**U.S. DEPARTMENT OF LABOR**
**OFFICE OF FEDERAL CONTRACT COMPLIANCE PROGRAMS**

TO:  Emilio Zamora                          FROM: Office of Federal Contract
     2653 Barton Hills Drive                      Compliance Programs
     Austin, TX 78704                             525 South Griffin Street, Room 840
                                                  Dallas, TX 75202

OFCCP Representative: Jane Suhr, Acting Regional Director

Complaint Number: I00300812

**TO THE COMPLAINANT**: You may file a lawsuit against the contractor under Title VII of
the Civil Rights Act of 1964 in federal or state court. **Your lawsuit must be filed within 90
calendar days of receipt of this notice, or your right to sue will be lost.** Please see the
enclosed information sheet on filing lawsuits for further information.

With the issuance of this Notice of Right-to-Sue, OFCCP is terminating its processing of your
complaint.

An information copy of this Notice has been sent to the below employer as named in your
complaint.

                    The University of Texas at Austin
                         10 Inner Campus Drive
                           Austin, TX 78705

On behalf of the United States Department of Labor,


_____            9/29/223
LAQUANDRA ADEBAJO                          Date
Director of Regional Operations
U.S. Department of Labor, OFCCP
525 South Griffin, Room 840
Dallas, Texas 75202

## INFORMATION RELATED TO FILING SUIT
## UNDER TITLE VII AND TITLE I OF THE ADA

This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.

**PRIVATE SUIT RIGHTS -Title VII of the Civil Rights Act of 1964, as amended (Title VII) or the Americans with Disabilities Act of 1990, as amended (ADA)**

In order to pursue this matter further, you must file a lawsuit against the contractor(s) named in the complaint **within 90 days of receipt of Notice of Right-to-Sue.** Once this 90-day period expires, your right to sue based on the complaint covered by this Notification will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notification.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notification is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the complaint or, to the extent permitted by court decisions, matters like or related to the matters alleged in the complaint.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the contractor has its main office. If you have simple questions, you usually can get answers from the Clerk of the court where you are bringing suit, but do not expect them to write your complaint or make legal strategy decisions for you.

**PRIVATE SUE RIGHTS - Equal Pay Act (EPA)**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment; back pay due for violations that occurred more than **2 years (3 years for willful violations) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/03 to 12/1/03, you should file suit before 7/1/05- not 12/1/05 -in order to recover unpaid wages due for July 2003. This EPA time limit is separate from the 90-day filing period under Title VII or the ADA referred to above. Therefore, if you also plan to sue under Title VII or the ADA, in addition to suing on the EPA claim, suit should be filed within the Title VIII ADA 90-day period **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION -Title VII and the ADA**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, help you to obtain a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).

Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND ASSISTANCE  - All Statutes**

If you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which the U.S. District Court can hear your case, you may contact an Office of Federal Contract Compliance Programs  (OFCCP)  representative at (972) 850 - 2650, who will coordinate with the Equal Employment Opportunity Commission (EEOC) to promptly obtain that information for you. If you need to inspect or obtain a copy of information in OFCCP's  file, please request it promptly in writing and provide the OFCCP complaint number. If you file suit and want to review the complaint file, **please make your review request within 6 months  of this Notice.** (Before filing suit, any request should be made within 90 days of the date of the Notification of Results of Investigation.) If you file suit, please send a copy of your Court complaint to:

Norma Guzman - Director
Equal Employment Opportunity Commission
Legacy Oaks Building A
5410 Fredericksburg Road
Suite 200
San Antonio, TX 78229
Phone: (210) 281-7530 / Fax: (210) 281-2522 / Email: sanantonio.intake@eeoc.gov